**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Schuck v. Columbus,* Slip Opinion No. 2018-Ohio-1428.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-1428

THE STATE EX REL. SCHUCK *v*. THE CITY OF COLUMBUS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Schuck v. Columbus,* Slip Opinion No. 2018-Ohio-1428.]**

*Elections—Mandamus—Writ of mandamus sought to compel removal of proposed city charter amendment from the ballot—Ballot summary conveys sufficient information to inform voters what they are being asked to vote on—Writ denied.*

(No. 2018-0427—Submitted April 10, 2018—Decided April 13, 2018.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this expedited election case, relator, William Schuck, seeks a writ of mandamus to compel respondents, the city of Columbus and the Franklin County Board of Elections, to remove a proposal to amend the Columbus city charter from the May 8, 2018 ballot. For the reasons set forth below, we deny Schuck's motion

for leave to amend his complaint to name Ohio Secretary of State Jon Husted as a respondent and we deny the writ.

**Background**

*Columbus Ordinance 0650-2018*

**{¶ 2}** The Ohio Constitution authorizes municipalities to adopt charters for local self-government. Ohio Constitution, Article XVIII, Sections 7 and 8. The city of Columbus is a charter city, having adopted a comprehensive charter for its government. *See State ex rel. Davis Invest. Co. v. Columbus*, 175 Ohio St. 337, 341, 194 N.E.2d 859 (1963).

**{¶ 3}** The Columbus city charter sets forth two procedures by which the charter may be amended, only one of which is relevant here. Namely, the city council may submit a proposed charter amendment to the electors of the city, in the form of an ordinance approved by a two-thirds vote of the council. Columbus Charter 45. The ordinance shall provide for submission of the proposed charter amendment to the electors at the next regular municipal election or, if no regular municipal election is scheduled to occur within a designated timeframe, at a special election. Columbus Charter 45-2. In any ordinance placing a proposed charter amendment on the ballot, the city council must "prescribe a brief summary of the same, which shall be accurate, shall not be misleading, and shall be without material omission or argument." Columbus Charter 45-4.

**{¶ 4}** In its current form, the Columbus city charter provides: "The legislative powers of the city, except as reserved to the people by this charter, shall be vested in a council, consisting of seven members, *elected at large*." (Emphasis added.) Columbus Charter 3. An "election at large," also known as an "at-large election," is defined as "[a]n election in which a public figure is selected from a major election district rather than from a subdivision of the larger unit." *Black's Law Dictionary* 631 (10th Ed.2014). Elsewhere, the charter spells out the operation of this at-large voting system:

The candidates for nomination to the office of city council member who shall receive the greatest vote in [the] primary shall be placed on the ballot at the next regular municipal election * * *, and the candidates at the regular municipal election, equal in number to the places to be filled, who shall receive the highest number of votes at such regular municipal election, shall be declared elected.

Columbus Charter 41-5.

{¶ 5} On September 6, 2016, the Columbus City Council and Columbus Mayor Andrew Ginther appointed a nine-member Charter Review Committee to review the structure and governance of city council. In its final report, the committee recommended that the council:

2.     Adopt a "District At-Large" form of Council whereby, * * *

 a.     The city is apportioned into nine geographic Council districts using best practices in apportionment and reapportionment.

 b.     To run for Council, a candidate must live in and file for a specific Council district seat.

 c.     Elections are shifted from at-large field races to at-large by-place races, where candidates who live in the same district run against each other for that seat.

 d.     Every Columbus voter maintains his/her right to cast a vote for the candidate of their choice for every seat on Council.

**{¶ 6}** On March 5, 2018, the Columbus City Council approved Columbus Ordinance 0650-2018, which proposed to amend the city charter in multiple respects and which provided for the submission of the proposed charter amendment to the voters for approval. The ordinance included making the following proposed changes to the charter:

- Amending Columbus Charter 3 to read: "The legislative powers of the city, except as reserved to the people by this charter, shall be vested in a council, consisting of nine members, elected from districts by the electors of the city";

- Adding a clause to Columbus Charter 4, stating that "[e]ach member of council shall be elected from one of nine districts by the electors of the city";

- Adding an express requirement to Columbus Charter 6 that a member of council shall have resided within the district the member represents for not less than one year preceding the regular primary election for the office; and

- Amending Columbus Charter 41-5 by deleting much of the language and amending the remainder to read:

> Every elector of the city may vote for any municipal office appearing on a primary, general, or special election ballot. The two candidates for nomination to any municipal office, including a councilmember elected by district, who shall receive the greatest number of votes in a primary election shall be placed on the ballot at a regular municipal election, and the candidates at the regular municipal election who shall receive the highest number of votes for their respective offices at such regular municipal election, shall be declared elected.

Thus, the changes proposed in Columbus Ordinance 0650-2018, if approved by the voters, would incorporate into the city charter the so-called "at-large by-place" system recommended by the Charter Review Committee.

{¶ 7} To accompany Columbus Ordinance 0650-2018, city council approved a "Proposed Charter Amendment Ballot Summary," consisting of 15 bullet-point items. The first sentence of the summary states that the proposed charter amendment "[t]ransitions city council from seven members elected at-large to nine members elected from districts by the electors of the city."

*Schuck's protest*

{¶ 8} On March 9, 2018, Schuck filed a formal protest against the proposed charter amendment. Schuck's protest made two arguments. First, he argued that the proposed charter amendment was substantively unconstitutional. Second, he argued that the summary language—"nine members elected from districts by the electors of the city"—was "false and deceptive" because the council members would not be elected from districts—they would be required to *reside* in districts, but they would be elected citywide, a distinction Schuck argued was not made clear by the phrase "by the electors of the city."

{¶ 9} On March 12, the office of Ohio Secretary of State Jon Husted approved the final ballot language. And on March 15, the board of elections informed Schuck that it would not hold a hearing on his protest. It declined to consider his constitutional challenge to the proposed charter amendment for the reason that the board lacked authority to make that determination. (This issue is not before the court in this case.) As for his objection to the ballot language, the board informed him that

> [o]ur legal counsel believes that [this second objection] would appear to be moot in light of the fact that the Board already has

submitted the ballot language summary to the Secretary of State [who] has responded with [his] approval. Moreover, the City of Columbus' charter reserves the right of City Council to summarize the ballot language.

{¶ 10} Schuck filed suit against the city of Columbus and the Franklin County Board of Elections on March 21 and filed an amended complaint on March 22. His amended complaint asks this court to issue a writ of mandamus to the city and the board directing them to take all necessary steps to remove the proposed charter amendment from the May 8 ballot. Pursuant to Sup.Ct.Prac.R. 12.08(A)(1), the case was automatically expedited because it was filed within 90 days of the May 8 election.

**Analysis**

*The merits of the mandamus complaint*

{¶ 11} To be entitled to a writ of mandamus, a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. Given that the May 2018 election is imminent, Schuck does not have an adequate remedy in the ordinary course of the law. *See State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 17 (holding that the relator had no adequate remedy at law because the election was imminent at the time the county board of elections denied the relator's protest); *accord State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18.

{¶ 12} As noted, the Columbus city charter requires the council, when placing a proposed charter amendment on the ballot, to adopt summary language.

According to the charter, such ballot language "shall be accurate, shall not be misleading, and shall be without material omission or argument." Columbus Charter 45-4. Schuck seeks a writ of mandamus compelling the removal of the proposal from the ballot based on alleged deficiencies in the ballot language.

{¶ 13} The requirements of Columbus Charter 45-4 mirror other election-law requirements. With respect to proposed statewide constitutional amendments, ballot language is presumptively valid "unless it is such as to mislead, deceive, or defraud the voters." Ohio Constitution, Article XVI, Section 1. And when a local issue qualifies for the ballot, a county board of elections may use either the entire text of the proposal as ballot language, or it may prepare and certify a condensed text so long as the text "properly describe[s]" the proposal. R.C. 3505.06(E). (If the board chooses to use a condensed text, the full text of the proposal, along with the percentage of votes necessary for passage, must be posted in each polling place in an easily accessible location. *Id.*)

{¶ 14} The text of a ballot statement " ' "must fairly and accurately present the question or issue to be decided in order to assure a free, intelligent and informed vote by the average citizen affected." ' " *State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, ¶ 29, quoting *State ex rel. Bailey v. Celebrezze*, 67 Ohio St.2d 516, 519, 426 N.E.2d 493 (1981), quoting *Markus v. Trumbull Cty. Bd. of Elections*, 22 Ohio St.2d 197, 259 N.E.2d 501 (1970), paragraph four of the syllabus. R.C. 3505.06 "serves to inform and protect the voter and presupposes a condensed text which is fair, honest, clear and complete, and from which no essential part of the proposed amendment is omitted." *State ex rel. Minus v. Brown*, 30 Ohio St.2d 75, 81, 283 N.E.2d 131 (1972).

{¶ 15} We evaluate summary ballot language for proposed local issues using the same standards used to evaluate ballot language for proposed statewide constitutional amendments. *State ex rel. Kilby v. Summit County Bd. of Elections*, 133 Ohio St.3d 184, 2012-Ohio-4310, 977 N.E.2d 590, ¶ 19. Those standards are

that (1) voters have the right to know what they are being asked to vote upon, (2) the use of language " 'in the nature of a persuasive argument in favor of or against the issue' is prohibited," and (3) the determinative issue is whether the cumulative effect of any technical defects in the ballot language is " 'harmless or fatal to the validity of the ballot.' " *Jurcisin v. Cuyahoga Cty. Bd. of Elections*, 35 Ohio St.3d 137, 141, 519 N.E.2d 347 (1988), quoting *Bailey* at 519.

{¶ 16} In its third proposition of law, the city asks us to adopt a per se rule that a ballot summary *cannot* be deficient when it uses exactly the same language as the proposed charter amendment itself. As authority, the city cites *State ex rel. C.V. Perry & Co. v. Licking Cty. Bd. of Elections*, 94 Ohio St.3d 442, 764 N.E.2d 411 (2002), in which we refused to "penalize the township electors' attempt to exercise their right of referendum for summarizing the resolution with substantially the same wording as the resolution itself," *id*. at 445. But that statement was made in response to a challenge that the summary did not sufficiently *explain* the terms used therein ("AG" and "PUD" in a zoning referendum to refer to "agricultural" and "planned unit development"). In *C.V. Perry*, there was no harm in using the same abbreviations in the summary as those that appeared in the resolution itself. But quoting selected language from a portion of a proposed charter amendment verbatim cannot be a complete defense when the allegation is one of material *omission*.

{¶ 17} From Schuck's perspective, the critical changes to the charter, the ones that flesh out the new voting system, do not appear in proposed Columbus Charter 3. For example, the summary does not explain that voters will cast ballots in all council races, including those for representatives in districts where they (the voters) do not reside, a legislative change that appears in the proposed amendment of Columbus Charter 41-5. Also, one of the bullet points in the summary explains that if a *vacancy* on the council is filled *by appointment*, the person receiving the appointment must reside in the district, but the summary does not say that

Columbus Charter 6 would be amended to impose a residency requirement upon *elected* council members.

{¶ 18} The city does not dispute that these would be material omissions if this information were in fact omitted. But the city contends that all the required information is contained in the single phrase employed in proposed Columbus Charter 3: "elected from districts by the electors of the city" necessarily means that the candidates for council must come from particular districts and that all the voters of the city would vote for each candidate, irrespective of a voter's residency district.

{¶ 19} The critical question, then, is whether city council satisfied the first prong of the *Jurcisin* three-part test: does the language of proposed Columbus Charter 3, imported wholesale into the summary, convey enough information for voters to know what they are being asked to vote on? We answer that question in the affirmative. The phrase "elected from districts by the electors of the city" conveys the important information: the council members will come from districts, but they will be elected "by the electors *of the city*." (Emphasis added.) The final clause is unambiguous and would not lead a reasonable reader to believe that council members will be elected exclusively by the voters in their residency districts.

{¶ 20} We hold that Schuck is not entitled to a writ of mandamus ordering the removal of the proposal from the May 8 ballot.

{¶ 21} In the alternative, Schuck complains in his second proposition of law that the board of elections failed to conduct an independent assessment of the city's proposed ballot language. But even assuming this to be true, the prayer for relief in Schuck's amended complaint did not request a remand to the board. Moreover, compelling the board of elections to evaluate the ballot language at this time would be an empty gesture given the sufficiency of the ballot language.

*The motion for leave to amend the complaint*

{¶ 22} In its answer, the city pleaded, as an affirmative defense, that Schuck "has failed to name all necessary parties to this action including Secretary of State Jon Husted." In response, Schuck filed a motion for leave to amend his amended complaint, if necessary, to add Husted as a respondent and also to add the Delaware and Fairfield County Boards of Elections. Respondents have not opposed the motion.

{¶ 23} At the outset, we deny the portion of Schuck's motion that asks for leave to amend in order to add the Delaware and Fairfield County Boards of Elections as respondents. Schuck states in his motion that he made this request in anticipation of an argument by the city of Columbus that those boards are necessary parties because portions of Columbus are located in those counties. However, the city has not advanced this argument.

{¶ 24} The city *does*, however, contend that Secretary of State Husted is a necessary party, based on R.C. 3501.11(V), which requires county boards of elections, after approving ballot language for local questions and issues, to "transmit the language to the secretary of state for the secretary of state's final approval." Schuck disputes whether the secretary of state exercises any substantive oversight over the city's proposed ballot language.

{¶ 25} Given our disposition of Schuck's mandamus complaint on the merits, we deem it unnecessary to resolve this question. *See State ex rel. Beard v. Hardin*, __ Ohio St.3d __, 2018-Ohio-1286, __ N.E.3d __, ¶ 35 (holding that it was unnecessary to decide whether the relator failed to name all necessary respondents because the relator was not entitled to mandamus relief on the merits). We therefore deny the motion for leave to amend as moot.

{¶ 26} Based on the foregoing, we deny the request for a writ of mandamus.

Writ denied.

O'CONNOR, C.J., and O'DONNELL, FRENCH, and FISCHER, JJ., concur.

KENNEDY, DeWINE, and DeGENARO, JJ., concur in judgment only.

_____

William Schuck, pro se.

Zach Klein, Columbus City Attorney, and Richard N. Coglianese, Joshua T. Cox, and Charles P. Campisano, Assistant City Attorneys, for respondent city of Columbus.

Ronald J. O'Brien, Franklin County Prosecuting Attorney, and Timothy A. Lecklider, Assistant Prosecuting Attorney, for respondent Franklin County Board of Elections.

_____